**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| GERALD KETTLER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:22-CV-500 SRW |
| ) | |
| METROPOLITAN ST. LOUIS SEWER ) | |
| DISTRICT, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant Metropolitan St. Louis Sewer District's Motion to Dismiss Plaintiffs' Complaint, or in the Alternative to Sever Plaintiff Catherine Politte's Claim (ECF No. 10). Both parties have consented to the exercise of plenary authority by a United States Magistrate Judge under 28 U.S.C. § 636(c). For the reasons set forth below, the Motion to Dismiss is denied.

**I.    BACKGROUND**

Plaintiffs Gerald Kettler, Dennis Boatwright, and Catherine Politte filed this action against Defendant Metropolitan St. Louis Sewer District ("MSD") alleging MSD violated 42 U.S.C. § 1981 when MSD fired Plaintiffs. The Court accepts the following facts as alleged in the Complaint as true:

MSD employed Boatwright and Kettler in various hourly employee positions since 2003 and 2004, respectively. MSD employed Politte in various managerial positions since 2008. At the time of her discharge, Politte was Assistant Director of Operations. In March 2020, Kettler and Boatwright were employed as Collection System Technicians working out of MSD's Grand Glaize Yard. Technicians are responsible for maintaining the collection system of MSD. They

1

work a regular daytime schedule, with rotating standby for nights and weekends. All technicians are governed by the same rules for working and recording time, no matter the yard to which they are assigned.

Bret Berthold is the Director of Operations for all of MSD, and he approves discipline for employees at all yards to ensure it is consistent. A standby crew consists of a crew leader, known as the "Team Lead," and two additional technicians. Standby assignments are made to the Team Lead, who assembles the standby crew, assigns tasks, and directs the reporting of hours for the entire team. MSD has a written standby policy requiring all members of the standby team to appear at all assignments and to report to the yard and use an MSD vehicle for any standby assignment. MSD is well aware there are accepted exceptions to this policy. During formal classroom training, MSD teaches technicians that the amount of time they submit on their timecards for standby work will be determined by the Team Lead, and each crew member's time must match.

Kettler and Boatwright were part of a standby team with Team Lead Greg Purnell for the week of March 1-8, 2020. During that week, each member of their crew submitted a total of 28 hours of time for standby work performed on March 4, 8, and 9. On March 4, the crew handled the assignment as a three-person crew, using one MSD vehicle and Purnell's personal vehicle. On March 7, the crew was called out again and used two MSD vehicles, one with Purnell and Boatwright, and one with Kettler. The same weekend, March 7-8, Purnell assigned the work of checking a pump, L52, to individual team members and told them they could use their personal vehicles. Purnell was an inexperienced Team Lead and did not submit a work order for checking the pump. MSD has standing orders to check pump L52 twice per day.

2

Purnell directed Kettler and Boatwright to each record 28 hours of work for the work performed on March 4, 8, and 9. In April 2020, a supervisor at the Grand Glaize Yard discovered an apparent discrepancy on a timecard for an employee for standby duty. The employee's standby team was crewed by Purnell. An investigation revealed a pattern of apparent discrepancies for standby teams crewed by Purnell. On information and belief, employees indicated Purnell directed them to check a pump that was on a standing order to be checked, for only one crew member at a time to check a pump, to use the employee's personal vehicle for standby work, and for each member of the crew to report as standby time the total time the crew spent performing standby work. The Assistant Director of Operations for the Grand Glaize Yard, Brian McGownd, considered these directions to constitute theft of time. On information and belief, McGownd and/or Berthold were unwilling to only discipline Purnell for this alleged theft, because Purnell is African American.

On information and belief, in order to avoid the optics of firing solely an African American, MSD fired each of the crew members who worked with Purnell as Team Lead. Berthold fired Boatwright and Kettler, both Caucasian men, on May 18 and 19, 2020, respectively, for falsification of a timecard.

Previously, an African American team leader was caught stealing time by not reporting for any Saturday standby work, but recording it as though he had. The Director of Operations gave him a written warning, but did not suspend or fire him. Another African American technician only received a three-day suspension when he falsified his timecard by leaving ten minutes early per day for two weeks. In August 2020, MSD City Yard night foreman Kevin Mullen was caught systematically adding hours to his crew's time. The crew members were not working the hours at all, and Mullen was intentionally padding the time for his crew. MSD

corrected the time, but did not discipline Mullen, or any of his crew who were all African American. In April 2021, MSD, through Berthold and McGownd, issued a three-day suspension to an African American technician for "abuse of District time for personal use and false and fraudulent timekeeping" from January through March 2021. The amount of time allegedly stolen was equivalent to the time MSD alleged Boatwright and Kettler took.

Berthold also approves discipline for all management employees, and therefore is required to ensure that discipline is consistent across managerial employees. MSD's long-standing operating procedure when hiring or promoting within Operations is to identify a hiring manager who puts together a three-person hiring panel and submits questions to Human Resources to ascertain technical competency and leadership. The panel is comprised of an HR representative and two managerial personnel with knowledge and expertise in the area of the hiring or promotion. HR screens the applicants for the position, presents the hiring panel with a group of finalists, and provides them with relevant information about the finalists. The panel interviews each finalist and privately ranks them. HR collects and tabulates the rankings and then distributes the results to the panel, placing the finalists in order of ranking. The hiring manger then makes a recommendation to the Director of Operations, who makes the ultimate selection.

Politte has been a hiring manager numerous times during her career with MSD and has participated on numerous panels for which she was not the hiring manager. In October 2021, she was part of a hiring panel for the position of Operations Supervisor of Maintenance, along with Rebecca Coyle, John McCarthy, and HR representative Steve Grass. Coyle was the hiring manager for the position. The finalists included two African American males, a white male, and a white female. The white male was objectively the best candidate. On information and belief, when HR distributed the results, all the members of the hiring panel were unanimous in their

4

rankings of the candidates. The white male candidate was ranked first and was awarded the position by Berthold.

Also in March 2021, there was an opening for Operations Supervisor of Operations at the Bissell Treatment plant. The hiring manager for the position was Robert Daly, and the remaining panel members were HR representative Craig Ballantine and Chris Pfifer. The same African American males and white female candidates were finalists, along with a white male candidate. The white male was objectively the best candidate. On information and belief, when HR distributed the results, all the members of the hiring panel were unanimous in their rankings of the candidates. The white male candidate was ranked first and was awarded the position by Berthold.

In late 2021 or early 2022, the African American males who were finalists for the aforementioned positions were promoted to other supervisor positions. On information and belief, the white female candidate has not been promoted. Before and after being on the panel, Politte mentored African American candidates for supervisor positions, including both of the African American males who applied for the aforementioned positions. In October or November 2021, Politte learned a discrimination charge had been filed against MSD regarding one or more of the Operations Supervisor hirings. Thereafter, Coyle retired. On March 17, 2022, Berthold fired Politte and did not give a reason for her discharge. Berthold offered Politte an opportunity to resign in lieu of termination by signing a pre-written resignation letter, which she rejected. Politte was not given the option to retire, although she is fully vested in MSD's pension plan.

On information and belief, in March 2022, Berthold told Daly he was being fired unless he signed a pre-written resignation letter. On information and belief, in March 2022, John McCarthy was placed on a ten-day suspension and was either fired or resigned. Politte, Coyle,

5

Daly, and McCarthy are all Caucasian. MSD did not dismiss African American members of hiring panels who gave the highest ranking to a Caucasian candidate or African American members of hiring panels who gave the highest ranking to an African American candidate in suspicious circumstances. Politte did not engage in racist conduct while serving on the hiring panel or at any other time during her tenure with MSD.

**II.     STANDARD**

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A plaintiff need not provide specific facts in support of his allegations, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam), but must include sufficient factual information to provide the "grounds" on which the claim rests, and "to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555 & n.3. *See also Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Id.* at 562 (quoted case omitted). On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id.* at 555-56; Fed. R. Civ. P. 8(a)(2).

## III. DISCUSSION

In its motion, MSD argues the Court should dismiss Plaintiffs' Complaint for failure to state a claim. In the alternative, MSD asserts the Court should sever Kettler's and Boatwright's claims from Politte's. The Court will first address the failure to state a claim arguments and then the severance arguments.

### A. Failure to State a Claim

MSD seeks to dismiss the Complaint arguing Plaintiffs failed to plead sufficient facts to establish an inference of unlawful discrimination. In support of its motion, MSD argues Plaintiffs have failed to plead facts which establish MSD discharged them because of their race, and they fail to identify background facts of MSD's prior discrimination against white individuals. Finally, MSD argues if the Court does not dismiss the claims, the Court should sever Kettler's and Boatwright's claims from Politte's.

"The purpose of § 1981 is to prohibit discrimination in the 'performance, modification, and termination of contracts' and to protect 'the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.'" *Williams v. Lindenwood Univ.*, 288 F.3d 349, 355 (8th Cir. 2002) (quoting 42 U.S.C. § 1981(b)). To establish a prima facie claim of race discrimination under § 1981, a plaintiff must establish (1) he or she is a member of a protected group; (2) the defendant intended to discriminate against him or her on the basis of race; and (3) the discrimination concerned an area enumerated by the statute. *Id*. Although the typical § 1981 case involves discrimination against a minority race, the statute also protects white citizens from racial discrimination. *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 286-87 (1976). Under § 1981, a plaintiff bears the burden of showing race was a but-for cause of his or her

7

injuries. *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014-15 (2020).

In support of its argument Plaintiffs have failed to allege an inference of discrimination, MSD argues Plaintiffs have not alleged similarly situated employees were treated differently than Plaintiffs; Plaintiffs make conclusory statements they were discharged to protect MSD from "backlash;" federal courts do not sit as personnel departments examining an entity's business decisions; and accusations of racism do not equate to race discrimination. These arguments do not persuade the Court to dismiss the Complaint.

The elements of a race discrimination claim under § 1981 are simple and straightforward. Plaintiffs' burden at this stage of the litigation is also simple and straightforward. They must allege sufficient facts to state a claim plausible on its face, and they have done so. In attempting to argue Plaintiffs have not established an inference of unlawful discrimination, MSD seeks to complicate Plaintiffs' burden, by placing additional burdens on Plaintiffs that do not arise at this stage of the litigation. MSD attempts to add requirements a plaintiff need not show until summary judgment when the Court applies the *McDonnell Douglas*[1] burden shifting framework. The *McDonnell Douglas* framework is not applied at the motion to dismiss stage because it "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).[2] Take MSD's argument Kettler's and Boatwright's claims fail as a matter of law because they do not adequately identify a similarly situated employee. A plaintiff may use similarly situated employees as one way to show pretext, which occurs in step three of the

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).
[2] Although the *Conley v. Gibson* pleading standard applied in *Swierkiewicz* has been overruled by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court reaffirmed, in *Twombly*, the holding in *Swierkiewicz* that a heightened pleading standard does not apply in discrimination cases. 550 U.S. at 569-570; *see also Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017) (explaining why *Swierkiewicz* still applies).

8

*McDonnell Douglas* framework, but a plaintiff is not required to do so in the initial complaint. *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010).

MSD also asserts Plaintiffs have not adequately alleged MSD discriminated against them on the basis of their race because Kettler's and Boatwright's allegation MSD fired them to avoid the unpleasant optics of solely firing a black employee does not show MSD fired them on the basis of their race. While the allegations in the Complaint could be more clear, a plausible interpretation of the claim is that Kettler and Boatwright would not have been fired if they were not white. As the Supreme Court stated, "a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock v. Clayton Cty., Ga.*, 140 S. Ct. 1731, 1739 (2020). If changing Kettler's and Boatwright's race would change the outcome, then their race is a but-for cause. They have alleged that if they were not white, they would not have been fired. Certainly conclusory statements to that affect would not be enough to state a claim. However, Kettler and Boatwright support their claim with allegations about the circumstances of their firing, as well as allegations about other employees, who were of races different than theirs, who were not fired for similar conduct. Reading the complaint as a whole, Kettler and Boatwright have plausibly alleged MSD fired them because of their race.

For Politte's claim, MSD argues she fails to plead any facts to establish she was discharged because of her race, and a "liberal construction" of the Complaint suggests she was discharged because of an inaccurate perception she was racist or engaged in discriminatory hiring practices. The Court disagrees. A truly liberal construction of Politte's claim is MSD fired white employees in reaction to a racial discrimination charge. If Politte was not white, MSD would not have fired her. She supports this with the allegation MSD did not summarily dismiss black members of hiring panels who also chose white candidates, or who chose black candidates

9

under suspicious circumstances. This is not a model pleading of a race discrimination claim. However, Federal Rules of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief;" it does not require perfection. Politte has alleged enough to survive.

MSD also argues Plaintiffs have not properly alleged background circumstances of MSD's prior discrimination against whites. In reverse discrimination cases, to establish a prima facie case, a plaintiff must show "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015) (citing *Hammer v. Ashcroft*, 383 F.3d 722, 724 (8th Cir. 2004)). In Eighth Circuit cases where the court has applied this extra requirement, the matter is on summary judgment, and the court is discussing the requirements for establishing a prima facie case under the *McDonnell Douglas* standard. *See Duffy v. Wole*, 123 F.3d 1026, 1037 (8th Cir. 1997) *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011); *Hammer*, 383 F.3d at 724; *Schaffhauser*, 794 F.3d at 903. As the Court explained previously, this is an evidentiary standard, not a pleading standard. *Swierkiewicz*, 534 U.S. at 510; *see also Blomker v. Jewell*, 531 F.3d 1051, 1056 (8th Cir. 2016) ("Under *Swierkiewicz*, it is not necessary to plead facts sufficient to establish a prima facie case at the pleading stage." (internal quotations omitted)). The Court will not dismiss the Complaint for failure to allege background facts not required at this stage of the litigation.

Finally, MSD asserts the Court cannot consider allegations made "on information and belief" and without those allegations, the Complaint fails to allege an inference of unlawful discrimination. This is an open question in the federal courts. Some courts, including the Eastern District of Missouri at times, have held that allegations made "on information and belief" are

10

vague and speculative and are not enough to survive a motion to dismiss for failure to state a claim. *See C. Pepper Logistics, LLC v. Lanter Delivery Sys., LLC*, No. 4:20-CV-1444 MTS, 2021 WL 3725680 at *9 (E.D. Mo. Aug. 23, 2021); *Schriener v. Quicken Loans, Inc.*, No. 4:12-CV-1193 CDP, 2012 WL 6553830 at *2 (E.D. Mo. Dec. 14, 2012); *U.S. Bank Nat'l Ass'n v. Parker*, No. 4:09-CV-1755 HEA, 2010 WL 2735661 at *3 (E.D. Mo. Jul. 9, 2010); *see also Kampschroer v. Anoka Cty.*, 57 F. Supp. 3d 1124, 2243 (D. Minn. 2014), *aff'd*, 840 F.3d 961 (8th Cir. 2016). The Eighth Circuit has not directly addressed the issue. It does allow allegations made "on information and belief" in fraud cases pleaded under the Rule 9(b) standard when the facts are "peculiarly within the opposing party's knowledge." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020). In that circumstance, the "complaint must set forth the source of the information and the reasons for the belief." *Id*. (quoting *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 590 (8th Cir. 2018)).

Other circuit courts have overwhelmingly held a plaintiff may make allegations on "information and belief" if there is a good faith basis for doing so, or if the information is peculiarly within the defendant's knowledge or control, as long as the allegations are not boilerplate and conclusory. *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 73 (1st Cir. 2000) (citing to cases from the 7th and 10th circuits); *McDermott v. Clondalkin Group, Inc.*, 649 Fed. App'x 263, 267-68 (3d Cir. 2016) (citing cases from the 2d, 3d, 7th, and 9th circuits); *Arista Records, LLC v. Doe*, 604 F.3d 110, 120 (2d Cir. 2010); *Clark v. Thompson*, 850 Fed. App'x 203, 209 (5th Cir. 2021); *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005); *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). Since the Eighth Circuit has yet to provide guidance on this issue, the Court will follow the other circuits. The Court finds Plaintiffs allegations on information and belief are not boilerplate and conclusory and are often about

11

information peculiarly within MSD's knowledge or control. Therefore, the Court will not disregard these allegations at this stage of the case.

**B.     Severance**

In its motion, MSD asks the Court, if it does not dismiss the Complaint, to sever Kettler and Boatwright's claims from Politte's. MSD asserts the claims involve separate transactions and separate facts. MSD also argues allowing Plaintiffs to present the claims to the same jury would impose significant prejudice on MSD.

Federal Rule of Civil Procedure 20(a) governs the permissive joinder of parties into an action. Rule 20(a) provides parties may be joined as plaintiffs in an action if:

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.

"Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1332–33 (8th Cir. 1974) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

Accordingly, the Eighth Circuit employs a very broad definition of "transaction" as that term is used in Rule 20: "Transaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* at 1333. Hence, Rule 20 permits all "reasonably related" claims to be tried in a single proceeding. *Id.* "Absolute identity of all events is unnecessary." *Id.* Joinder of parties under Rule 20(a) is not an absolute right, however. Under Rules 20(b) and 42(b), a court has discretion to order separate trials or make other orders to prevent delay or prejudice. *Mosely*, 497 F.2d at 1332.

At this point in the litigation, the Court does not believe the claims need to be severed and that it would conserve resources to conduct discovery on the claims together. Boatwright and Kettler's claims are reasonably related to Politte's claims. They were all fired by the same individual, and if there is no direct evidence of discrimination, all will eventually have to show background circumstances establishing MSD is the rare employer who discriminates against the majority. Presenting all three claims before a single jury may cause significant prejudice to MSD. However, at this time the Court believes severance is not necessary. The Court can revisit this issue again after the parties have completed discovery.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Metropolitan St. Louis Sewer District's Motion to Dismiss Plaintiffs' Complaint, or in the Alternative to Sever Plaintiff Catherine Politte's Claim (ECF No. 10) is **DENIED**. Defendant's request to sever the claims is denied, without prejudice.

So Ordered this 29th day of November, 2022.

_____
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**